# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

ROMALIS A. HARTWELL                 CIVIL ACTION

VERSUS                                        NO.  06-6261

N. BURL CAIN, WARDEN           SECTION "K"(2)


## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  See 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

---

[1] Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.    STATE COURT PROCEDURAL BACKGROUND

The petitioner, Romalis A. Hartwell, is incarcerated in the Louisiana State

Penitentiary in Angola, Louisiana.[2]  Hartwell was charged by bill of information in

Jefferson Parish on September 4, 2002, with two counts of armed robbery.[3]  The

Louisiana Fifth Circuit Court of Appeal summarized the facts of the case as follows:

> On the afternoon of June 21, 2002, Foster and Phillips were working at the
> Golden Beauty Supply on Ames Boulevard in Marrero, Louisiana when a man
> entered the shop.  Foster, the manager, testified that the man, whom she had never
> seen before, entered the shop after she let him in with the store's automatic
> buzzer.  After the other customers left the store, the Defendant put his hand under
> his shirt and approached Foster.  He pulled a sun visor down over his face, said
> this was a robbery and to "Get on the f------ floor."  The Defendant struck the
> cash register until it opened.  He removed approximately $200 to $300 in cash
> from the register, but wanted to know where the rest of the money was kept.
> Foster told him it was in the floor safe.  The Defendant became enraged, placed
> a gun to Foster's head and demanded the money from the safe.  He said that
> "there was supposed to be a safe in the back."  Foster said that the only safe she
> knew of was the floor safe, to which she did not have keys.  The two women were
> ordered to kneel on the floor with their hands behind their heads.  Foster testified
> that she believed they were about to die and that she prayed as she knelt.
> Eventually, Foster heard the door open and close.  At that point, she discovered
> that the robber had left the store.  Foster testified that both ladies' purses, earrings,
> jewelry, a "lot of the clippers and everything off the back shelf" had been stolen.
>
> Detective John Carroll of the Jefferson Parish Sheriff's office went to the scene
> and met with Phillips and Foster.  Foster described the perpetrator as wearing a
> blue Hawaiian shirt, shorts, a blue "rag" on his head, and a sun visor.  The
> detective canvassed the neighborhood for suspects, but did not find anyone
> matching the description.

---

[2]Rec. Doc. No. 8, Petition.

[3]St. Rec. Vol. 1 of 4, Bill of Information, 9/4/02.

Troy Millro (Millro) testified that the Defendant approached him on the day of the robbery and asked if he wanted to buy some clippers that were still in the package.  Millro said that he declined because he did not have the money.  The Defendant asked him to drive him to someone else's house, where that person was going to purchase the clippers.  Millro agreed, but told the Defendant that he wanted to bring his fiancée, Tiffany Carter (Carter), to their house first.  When the three reached the house, the Defendant told Millro that he needed to go into Millro's backyard.  Millro followed the Defendant to an area where Millro and Carter stored clothes.  The Defendant pulled out a plastic bag containing credit cards, Medicaid cards, and other personal effects.  The Defendant then told Millro that he had "robbed them b------."

After Millro found another bag with similar contents, he took the two bags inside and told Carter what had just happened.  She then telephoned Foster's home and spoke to Foster's son, who said that Foster was at the Golden Beauty Supply where she worked.  Carter and Millro went to the shop and returned Foster's personal effects.[4]  Foster copied the license plate of Carter's car and gave it to Detective Carroll.

After further investigation, Detective Carroll discovered that the car was registered to Carter.  Carter and Millro then went to the detective bureau where they related the events that led to the return of Foster's belongings.  Millro also identified the Defendant's photograph from a photographic lineup as the person who attempted to sell him the clippers.  Thereafter, Detective Carroll went to the Defendant's residence and he consented to a search of his house.  The Defendant's girlfriend, Rochella Sommersville (Sommersville), consented to a search of her vehicle that was parked at the residence.  During the automobile search, Detective Carroll found a blue Hawaiian shirt in the trunk.

According to Detective Carroll, both Foster and Phillips positively identified the Defendant from a photographic lineup.  At trial, Foster positively identified the Defendant as the perpetrator and the Hawaiian shirt as the one worn by the Defendant during the robbery.

The Defendant sought to establish an alibi defense. He claimed that, on the day of the robbery, after work at Avondale, Sommersville picked him up from work at approximately 3:00 p.m. and they went to see a movie.  However, the show

---

[4]The record does not indicate whether Phillips' belongings were also returned.

they wanted to see was sold out, so they went to visit friends, Keshawn Harris (Harris) and Timothy Vicks (Vicks). All of these witnesses testified that the Defendant and Sommersville were at the Harris' and Vicks' apartment from approximately 4:00 p.m. until 6:30 p.m.

Sommersville testified that she had worked at the Golden Beauty Supply until the end of May 2002. She quit the job because she discovered that she was pregnant. Sommersville said that the owner told her she could have her job back after the baby was born. However, Sommersville also testified inconsistently that she found out on June 21, 2002, the day of the robbery, that she was pregnant. According to Sommersville, it was this discovery that prompted a clear memory of the day's events. The Defendant testified that Sommersville found out that she was pregnant a few days before June 21, 2002. The Defendant said he had been to the Golden Beauty Supply many times when Sommersville worked there.

(footnote in original) <u>State v. Hartwell</u>, 866 So.2d 899, 901-903 (La. App. 5th Cir. 2004); State Record Volume 1 of 4, 5th Cir. Opinion, 03-KA-1214, January 27, 2004.

Hartwell was tried by a jury on June 4 and 5, 2003, and was found guilty as charged on both counts.[5] On June 27, 2003, Hartwell's counsel filed a motion for a new trial based on questionable identification testimony and the unavailability of testimony from victim Phillips and Mrs. Choy, the owner of the store.[6] The state trial court denied the motion at a hearing held on June 11, 2003.[7] The court thereafter sentenced Hartwell to serve concurrent 35-year prison sentences on each count, with an additional

---

[5]St. Rec. Vol. 1 of 4, Trial Minutes (2 pages), 6/4/03; Corrected Trial Minutes, 6/5/03; St. Rec. Vol. 2 of 4, Jury Verdict, 6/5/03; Trial Transcript, 6/4/03; St. Rec. Vol. 3 of 4, Trial Transcript, 6/5/03.

[6]St. Rec. Vol. 1of 4, Motion for New Trial, 6/27/03.

[7]St. Rec. Vol. 1 of 4, Sentencing Minutes, 7/11/03; St. Rec. Vol. 3 of 4, Sentencing Transcript, 7/11/03.

consecutive five years on each count, under Louisiana's weapons enhancement provision.[8] The sentences were to be without benefit of parole, probation and suspension of sentence. The state trial court also denied Hartwell's motion to reconsider the sentences.[9]

On appeal to the Louisiana Fifth Circuit Court of Appeal, Hartwell's counsel raised three grounds for relief:[10] (1) The evidence was insufficient to establish beyond a reasonable doubt that Hartwell was the perpetrator. (2) The motion for a new trial should have been granted. (3) The sentences were excessive. The Louisiana Fifth Circuit affirmed the conviction and sentences on January 27, 2004.[11] The court found that Hartwell's claims were without merit.

Hartwell's counsel filed a writ application with the Louisiana Supreme Court which raised two issues:[12] (1) The evidence was insufficient to establish beyond a reasonable doubt that Hartwell was the offender. (2) The sentences were excessive. On

---

[8]Id.

[9]St. Rec. Vol. 1 of 4, Motion to Reconsider Sentence, 7/11/03; Trial Court Order, 7/23/03.

[10]St. Rec. Vol. 3 of 4, Appeal Brief, 03-KA-1214, 11/10/03.

[11]State v. Hartwell, 866 So.2d at 899; St. Rec. Vol. 1 of 4, 5th Cir. Opinion, 03-KA-1214, 1/27/04.

[12]St. Rec. Vol. 4 of 6, La. S. Ct. Writ Application, 04-KH-448, 2/19/04; St. Rec. Vol. 1 of 4, La. S. Ct. Letter, 2004-K-448, 2/19/04.

June 25, 2004, the Louisiana Supreme Court denied the writ application without reasons.[13]

Hartwell's conviction became final 90 days later, on September 23, 2004, when he did not file a writ application with the United States Supreme Court. Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1).

On June 28, 2005, Hartwell filed a state court application for post-conviction relief in which he asserted six grounds for relief:[14] (1) ineffective assistance of counsel for failure to prepare, failure to impeach the victim Foster, failure to file for a preliminary hearing, failure to object to the testimony, failure to object to the admission of hearsay from Detective Carroll, failure to object to the denial of the motion to suppress the inadmissable identification testimony; (2) insufficient evidence in that there was no physical evidence to link him to the crime and the identification evidence was questionable, (3) the trial court erred in denying the motion to suppress the identification and the motion for production of Brady material and police reports, (4) the trial court

---

[13]State v. Hartwell, 876 So.2d 832 (La. 2004); St. Rec. Vol. 4 of 4, La. S. Ct. Order, 2004-K-0448, 6/25/04.

[14]St. Rec. Vol. 1 of 4, Uniform Application for Post Conviction Relief, 6/28/05.

erred in denying the motion for a new trial, (5) excessive sentence, and (6) denial of due process.

The state trial court denied relief on July 25, 2005, finding no merit to the ineffective assistance of counsel claim.[15]  The court also found that the insufficient evidence claim and the claim concerning denial of the motion for a new trial were repetitive of claims that had been resolved on appeal.  The court further held that the excessive sentence claim was not appropriate for post-conviction review.  Finally, the trial court refused to consider the challenge to the denial of the other motions and the denial of due process claim because Hartwell failed to brief those issues.

The record reflects that Hartwell sought timely review in the Louisiana Fifth Circuit, raising only the ineffective assistance of counsel claim.[16]  The court denied the application on October 24, 2005, finding that Hartwell had failed to disclose any error

---

[15]St. Rec. Vol. 1 of 4, Trial Court Order, 7/25/05.

[16]St. Rec. Vol. 4 of 4, 5th Cir. Writ Application (undated); Notice of Intent, 8/10/05; Trial Court Order, 8/12/05. The filing date of the writ application, October 20, 2005, appears on the face of the court's subsequent order and has been confirmed with the clerk of that court.  St. Rec. Vol. 1 of 4, 5th Cir. Order, 05-KH-873, 10/24/05.

in the trial court's order.[17]   Hartwell's subsequent writ application to the Louisiana Supreme Court was denied without reasons on June 23, 2006.[18]

## II.   FEDERAL HABEAS PETITION

On November 7, 2006, Hartwell filed a petition for federal habeas corpus relief in which he seeks relief on two grounds:[19]   (1) insufficient evidence because of lack of veracity in the inconsistent statements of Troy Millro and Tiffany Carter and the identification made by the victim, (2) ineffective assistance of counsel who failed to investigate and impeach the State's witnesses.

The State filed a response in opposition to the petition arguing that Hartwell failed properly to brief his claims to show entitlement to federal relief and, to the extent his arguments would be the same as those presented to the state courts, the claims are without merit.[20]

Hartwell filed a traverse to the State's response in which he argues that his counsel was ineffective for failure to prepare, study the facts, investigate the victims and

---

[17]St. Rec. Vol. 1 of 4, 5th Cir. Order, 05-KH-873, 10/24/05.

[18]St. Rec. Vol. 4 of 4, La. S. Ct. Writ Application, 06-KH-246, 2/11/06 (postmarked 11/23/05); St. Rec. Vol. 1 of 4, La. S. Ct. Letter, 2006-KH-246, 2/1/06 (postmarked 11/23/05); State ex rel. Hartwell v. State, 930 So.2d 971 (La. 2006); St. Rec. Vol. 4 of 4, La. S. Ct. Order, 2006-KH-0246, 6/23/06.

[19]Rec. Doc. No. 8.

[20]Rec. Doc. No. 7.

witnesses, or visit the crime scene, and also for failure to impeach Foster's and Millro's inconsistent testimony or to object to the inadmissable hearsay testimony of Detective Carroll.[21]  He further argues that the evidence was insufficient because the State failed to present evidence linking him to the crime or supporting the identification testimony offered by the victim.

III.   GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[22] and applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore applies to Hartwell's petition, which, for reasons discussed below, is deemed filed in a federal court on September 13, 2006.[23]

---

[21]Rec. Doc. No. 9.

[22]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[23]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes and the record demonstrates that Hartwell's petition is timely and that he has exhausted available state court remedies. The State has not raised a procedural default defense and none is apparent from my review of the record. Hartwell's claims are, nevertheless, without merit and must be dismissed for the following reasons.

IV.   STANDARDS OF A MERITS REVIEW

Amended 28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings. Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

---

(5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). Hartwell's petition was filed by the clerk of court on November 7, 2006, when the filing fee was paid. Hartwell dated his signature on the petition on September 13, 2006. This is the earliest date on which he could have delivered the pleadings to prison officials for mailing. The fact that he paid the filing fee at a later date does not alter the application of the federal mailbox rule to his pro se petition. See Cousin v. Lensing, 310 F.3d 843, (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing Spotville, 149 F.3d at 374).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'"  Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir.), cert. denied, 531 U.S. 849 (2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001); Hill, 210 F.3d at 485.  The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the

> writ if the state court identifies the correct governing legal principle from
> this Court's decisions but unreasonably applies that principle to the facts
> of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000);  Penry, 532 U.S. at 792-93;

Hill, 210 F.3d at 485.  "'A federal habeas court may not issue the writ simply because

that court concludes in its independent judgment that the state court decision applied [a

Supreme Court case] incorrectly.'"  Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting

Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); Bell v. Cone,

535 U.S. 685, 699 (2002).  Rather, under the "unreasonable application" standard, "the

only question for a federal habeas court is whether the state court's determination is

objectively unreasonable."  Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002), cert.

denied, sub nom, Neal v. Epps, 537 U.S. 1104 (2003). The burden is on the petitioner to

show that the state court applied the precedent to the facts of his case in an objectively

unreasonable manner.  Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25);

Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

A.    SUFFICIENCY OF THE EVIDENCE

Hartwell alleges that the State failed to prove beyond a reasonable doubt that he

committed the crimes charged.  Hartwell bases this claim on the assertions that the

identification testimony was insufficient and the witness testimony was inconsistent.  He

also argues that there was no physical evidence to prove he was present at the scene of the crime.

Hartwell raised this claim on direct appeal to the Louisiana Fifth Circuit.  Using the standard set forth in Jackson v. Virginia, 443 U.S. 307 (1979), and related state case law, the state appellate court held that the evidence presented was sufficient.  The court rejected Hartwell's contentions that the jury should not have believed the State's witnesses regarding the identification of the perpetrator.  The court concluded that the jury was entitled to judge the credibility of the testimony and evidence and there was no basis for the court to impinge upon that discretion.

The Louisiana Supreme Court denied Hartwell's subsequent application without reasons and is presumed to have relied upon the same grounds as the Louisiana Fifth Circuit's reasoned opinion.  Ylst v. Nunnemaker, 501 U.S. 797, 802 (1991).

A claim of insufficient evidence presents a mixed question of law and fact.  Maes v. Thomas, 46 F.3d 979, 988 (10th Cir. 1995).  Therefore, this court must examine whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

The well established federal standard set forth in Jackson, 443 U.S. at 319, requires the court to determine whether, after identifying the elements of the offense as defined by state substantive law and viewing the evidence in the light most favorable to

13

the prosecution, a rational trier of fact could have found the essential elements of the crime to have been proven beyond a reasonable doubt.  <u>Donahue v. Cain</u>, 231 F.3d 1000, 1004 (5th Cir. 2000); <u>Gilley v. Collins</u>, 968 F.2d 465, 467 (5th Cir. 1992); <u>Guzman v. Lensing</u>, 934 F.2d 80, 82 (5th Cir. 1991).

Hartwell was charged and convicted of armed robbery in violation La. Rev. Stat. Ann. §14:64.  Armed robbery is defined as "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon."  La. Rev. Stat. Ann. § 14:64; <u>State v. Collins</u>, 910 So.2d 454, 457-58 (La. App. 5th Cir. 2005).

In this case, Hartwell does not allege that the State failed to prove that an armed robbery occurred.  Instead, Hartwell complains that the identification testimony of the State's witnesses was not credible and was inconsistent.

The fact that Hartwell's conviction may have been based on the credibility of witness testimony is insufficient to supplant the jury's determination of guilt.  <u>Green v. Johnson</u>, 160 F.3d 1029, 1047 (5th Cir. 1998).  Review of the sufficiency of the evidence does not include review of the weight of the evidence or of the credibility of the witnesses.  <u>Schlup v. Delo</u>, 513 U.S. 298, 330 (1995) (under <u>Jackson</u> resolving credibility issues is generally beyond the scope of appellate review); <u>United States v. Goff</u>, 155 Fed. Appx. 773 (5th Cir. 2005) (<u>citing</u> <u>United States v. Garcia</u>, 995 F.2d 556, 561 (5th

Cir.1993)).  Instead, the narrow standard of review under <u>Jackson</u> "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts."  <u>Jackson</u>, 443 U.S. at 319.  "The trier of fact has broad discretion to 'resolve conflicts in testimony, to weigh evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" <u>Green</u>, 160 F.3d at 1047 (quoting <u>Jackson</u>, 443 U.S. at 319).

At trial, Tena Foster, one of the victims, identified Hartwell as the man who robbed her.[24]  The testimony reflects that Foster worked at the Golden Beauty Supply on June 21, 2002, the day of the robbery.[25]  She was the person who let Hartwell into the store.[26]  Hartwell was wearing a Hawaiian shirt, a blue visor and shorts.[27]

Hartwell waited until other customers left and approached the front counter.[28]  He pulled his sun visor down over his face, across his nose.[29]  He told Foster this is a robbery

---

[24]St. Rec. Vol. 2 of 4, Trial Transcript, pp. 42-43, 45, 52, 54, 6/3/03; St. Rec. Vol. 3 of 4, Trial Transcript, pp. 29-30, 6/5/03.

[25]<u>Id</u>., at p. 38-39.

[26]<u>Id</u>., at p. 42.

[27]<u>Id</u>., at pp. 42-43.

[28]<u>Id</u>., at p. 45.

[29]<u>Id</u>., at p. 46.

and for her to get down on the floor.[30]  He then tried to get the cash register opened by banging on it and hitting the keys.[31]  When he saw that the register did not contain a significant amount of money, approximately $200 to $300, he pulled out his gun and told Foster to get up and take him to the safe in the back.[32]  She told him there was no safe in the back and the money is dropped into the floor safe.[33]  He tried to open the floor safe but could not.  He then had the two women walk to the back at gunpoint and made them kneel down.[34]  He then left the store.

Foster later determined that, before leaving, the man also stole clippers, earrings, jewelry, and their purses.[35]  During the investigation by Detective John Carroll, another witness, Fay Phillips, also identified Hartwell from a photographic line-up as the perpetrator.[36]  Foster later learned that Hartwell's girlfriend, Rochella Sommersville, used to work at the store.[37]

---

[30]Id., at p. 45.

[31]Id., at p. 48.

[32]Id., at pp. 48, 50.

[33]Id., at p. 49.

[34]Id.

[35]Id.

[36]St. Rec. Vol. 3 of 4, Trial Transcript, p. 24, 6/5/03.

[37]St. Rec. Vol. 2 of 4, Trial Transcript,  p. 56, 6/4/03.

Foster's purse was later returned to her by a young lady.[38]  Foster contacted

Detective Carroll, who was the investigator on the case, to report that the young lady

found her purse.[39]  She was also able to give him her license plate number after the young

lady brought the purse back to her at the beauty supply store.[40]  Detective Carroll later

identified the lady as Tiffany Carter.[41]

Troy Millro also identified Hartwell at trial as the person who tried to sell hair

clippers to him.[42]  Hartwell showed Millro a bag filled with medicaid cards, food stamp

cards, work identification cards and other papers.[43]  Hartwell told him that he had robbed

"them bitches."[44]  Millro and his girlfriend, Tiffany Carter, looked through the items left

by Hartwell, contacted the home of one of the ladies on the identification cards and

---

[38]Id., at pp. 51, 57.

[39]Id., at p. 50.

[40]Id., at p. 51.

[41]St. Rec. Vol. 3 of 4, Trial Transcript, p. 11, 6/5/03.

[42]Id., at p. 59.

[43]Id., at p. 61.

[44]Id.

returned the items to her at the beauty supply store.[45]  Thereafter, Millro and Carter spoke

with Detective Carroll, and Millro identified Hartwell in a photographic line-up.[46]

The police later conducted a consensual search of Hartwell's apartment and

Rochella Sommersville's car.[47]  Detective Carroll recovered from Sommersville's car a

Hawaiian shirt which matched the description of the shirt worn by the robber.[48]

The jury also heard the testimony of Sommersville, who testified that she and

Hartwell spent the afternoon together on the day of the robbery.[49]  She testified that she

recalled the events of that day because she had found out that morning that she was

expecting their first child.[50]  The defense also called two of Sommersville's friends,

Keshawn Harris and Timothy Vicks, who testified that Sommersville and Hartwell spent

a couple of hours with them on the afternoon of the robbery.[51]

---

[45]Id., at p. 62, 76.

[46]Id., at pp. 63-64; St. Rec. Vol. 3 of 4, Trial Transcript, pp. 10-12, 17-18, 22, 6/5/03.

[47]St. Rec. Vol. 3 of 4, Trial Transcript, pp. 26-28, 6/5/03.

[48]Id., at pp. 26-28, 31.

[49]Id., at pp. 58-59.

[50]Id., at p. 58.

[51]Id., at pp. 70-80.

Hartwell also testified on his own behalf.[52]  He denied trying to sell merchandise to his friend Troy Millro.[53]  He also denied committing the robbery.[54]  Hartwell also testified that Sommersville had found out about her pregnancy one to two days before the robbery, not on the day of the robbery.[55]

The record shows that the State presented evidence that Foster and Millro were able to identify Hartwell both in court and out of court.  Another witness, Phillips, was also able to identify Hartwell in a photographic line-up shown to her by Detective Carroll.  Foster's testimony established that Hartwell had a gun and held her and Phillips at gunpoint while he stole their purses and money and items from the beauty supply store. The jury obviously credited the witness testimony over the testimony of Hartwell and his friends.  The foregoing testimony proved every element of the crime of armed robbery under Louisiana law.

With regard to Hartwell's challenge to the reliability of the identification testimony, the record demonstrates, as the state courts resolved, that the identification process was not suggestive.  In Manson v. Brathwaite, 432 U.S. 98, 114-16 (1977), the United States Supreme Court reaffirmed several factors enumerated in Neil v. Biggers,

[52]Id., at p. 81.

[53]Id., at p. 84, 87.

[54]Id., at p. 87-89.

[55]Id., at p. 93-94.

409 U.S. 188, 199 (1972), that should be considered when reviewing the reliability of a witness's identification, including: (1) the opportunity of the witness to view the subject; (2) the witness's degree of attention; (3) the accuracy of the description; (4) the witness's level of certainty; (5) the elapsed time between the crime and the identification; and (6) the corrupting influence of the suggestive identification itself. Passman v. Blackburn, 652 F.2d 559, 570-71 (5th Cir. 1981); Herrera v. Collins, 904 F.2d 944, 946 (5th Cir. 1990).

The propriety of the identification process was considered at a hearing held by the state trial court on the morning of trial and again on direct appeal by the Louisiana Fifth Circuit.[56]  The identification testimony reflects that Foster had several opportunities to view Hartwell while he was in the store.  He approached her face-to-face before pulling his visor over his nose.  Foster and Detective Carroll each testified at trial that she did not hesitate to pick Hartwell's picture from the lineup or to identify the shirt seized from Sommersville's car.  The lineup was done within a week of the robbery.  The same is true of the identifications made by Millro and Phillips.

None of the identification testimony was inconsistent as suggested by Hartwell. The witnesses had ample opportunity to view him and they each made an identification

---

[56]St. Rec. Vol. 2 of 4, Trial Transcript, pp. 7-10, 6/4/03.

within a week of the robbery.  Hartwell has not shown that the identification testimony was inconsistent, suggestive or unreliable.

The evidence presented at trial was therefore sufficient to establish <u>all</u> of the elements necessary to prove that an armed robbery occurred.  In addition, the victims positively identified Hartwell as the perpetrator and the identification process was reliable, not suggestive.

The state courts' denial of relief on this claim was not contrary to or an unreasonable application of <u>Jackson</u>.  Hartwell is not entitled to relief on this claim.

B.      <u>INEFFECTIVE ASSISTANCE OF COUNSEL</u>

Hartwell also alleges ineffective assistance by his trial counsel.  He alleges that counsel was ineffective for failure to investigate and impeach the State's witnesses.  Although he did not further brief these claims, Hartwell argues in his traverse to the State's opposition memorandum that his counsel "did not receive enough time to prepare, study the facts, or investigate victims, witnesses, and locations of the incidents."  He further argues that his counsel failed to impeach the victim, Tena Foster, regarding her description of the perpetrator and failed to impeach Troy Millro with his own inconsistent testimony.  He also complains that counsel failed to object to the hearsay testimony of Detective Carroll regarding Fay Phillips's identification.

These claims were raised in the state court post-conviction proceedings. Applying the standards set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the state trial court denied relief on grounds that Hartwell's claim addressed strategic decisions and trial tactics made by counsel, which were entitled to deference. The court also referenced the numerous pretrial motions filed by counsel, including those seeking to suppress evidence and challenge the identification process. The court noted that counsel subpoenaed alibi witnesses to trial and "properly cross-examined" State witnesses. The Louisiana Fifth Circuit and the Louisiana Supreme Court denied further relief without additional reasons and are presumed to have relied upon the reasons given by the state trial court. <u>Ylst</u>, 501 U.S. at 802.

The issue of ineffective assistance of counsel is a mixed question of law and fact. <u>Motley v. Collins</u>, 18 F.3d 1223, 1226 (5th Cir. 1994). Thus, the question before this court is whether the state courts' denial of relief was contrary to, or an unreasonable application of, United States Supreme Court precedent.

The standard for judging the performance of counsel was established by the Supreme Court in <u>Strickland</u>, 466 U.S. at 668, which the state trial court cited and applied. In <u>Strickland</u>, the United States Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and resulting prejudice. <u>Strickland</u>, 466 U.S. at 697. The Supreme Court first held that "the defendant must show that counsel's representation fell below

an objective standard of reasonableness." Id. at 687-88.  Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694; United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.  Kimler, 167 F.3d at 893.  A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.'  It is not enough, however, under Strickland 'that the errors had some conceivable effect on the outcome of the proceeding.'"  Motley, 18 F.3d at 1226 (quoting Strickland, 466 U.S. at 693).

On federal habeas review, scrutiny of counsel's performance "must be highly deferential," and the court will "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance."  Moore v. Johnson, 194 F.3d 586, 591 (5th Cir. 1999) (citing Strickland, 466 U.S. at 689-90).  In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial.  Strickland, 466 U.S. at 689; Neal, 286 F.3d at 236-37; Clark v. Johnson, 227 F.3d 273, 282-83 (5th Cir. 2000),

cert. denied, 531 U.S. 1167 (2001).  "A court must indulge a 'strong presumption' that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight."  Bell, 535 U.S. at 697 (citing Strickland, 466 U.S. at 689).

This court must apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance."  Strickland, 466 U.S. at 690.  Federal courts have consistently recognized that tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance.  Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999), cert. denied, 528 U.S. 1013 (1999) (citing Rector v. Johnson, 120 F.3d 551, 564 (5th Cir. 1997) and Mann v. Scott, 41 F.3d 968, 983-84 (5th Cir. 1994)).  Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise.  Strickland, 466 U.S. at 689; Moore, 194 F.3d at 591.  The burden is on petitioner to demonstrate that counsel's strategy was unreasonable.  Strickland, 466 U.S. at 689.

(1)    TIME TO PREPARE FOR TRIAL, INTERVIEW WITNESSES AND VISIT RELEVANT LOCATIONS

In this claim, Hartwell argues that his counsel provided ineffective assistance because he had only three weeks to prepare for trial and could not properly investigate.

24

With regard to this argument, the state trial court did not find deficient performance, referencing the many pretrial motions filed by counsel and counsel's cross-examination and presentation of witnesses at trial.

The record reflects that counsel was enrolled in the case at least one month before trial.[57] Counsel by that time was familiar enough with the case to give notice of his intent to present the detailed alibi defense.[58]

A reading of the entire trial transcript reflects that counsel was well-prepared to cross-examine each of the State's witnesses in an effort to discredit their testimony. The transcript demonstrates that counsel's questions were relevant and targeted to each witnesses' direct testimony.

Counsel also challenged the identification process prior to trial. Counsel reiterated his challenge to that procedure during cross-examination of Detective Carroll and Foster in an effort to elicit testimony which would raise doubt that Hartwell was the perpetrator.

Having reviewed the entire transcript, I cannot find any indication that counsel was not prepared for trial or that counsel was not prepared to question each of the State's witnesses. Hartwell has not established that counsel's performance was in any way deficient or that it suffered from his failure to visit the crime scene.

_____

[57]See St. Rec. Vol. 1 of 4, Notice of Intent to Call Alibi Witnesses, 5/9/03 (first pleading filed by John H. Thomas, trial counsel).

[58]Id.

Having failed to point to a particular, deficient practice by counsel, Hartwell has not met either prong of the <u>Strickland</u> test. The state courts' denial of relief was not contrary to, or an unreasonable application of, Supreme Court precedent. Hartwell is not entitled to relief on this claim.

(2)   <u>FAILURE TO IMPEACH TENA FOSTER</u>

Hartwell alleges that his counsel should have impeached Foster's testimony based on inconsistencies in her testimony when compared with other evidence. He first alleges that Foster's testimony conflicted with that of Detective Carroll regarding identification of the Hawaiian shirt. He also alleges that her description of the perpetrator, the gun and the items stolen differed from that contained in the police report. Hartwell apparently suggests that counsel should have used these differences to impeach the credibility of Foster's testimony.

First, Foster did not testify at trial regarding if, how, when or why Detective Carroll showed her the Hawaiian shirt. When asked, she merely answered "yes" to the prosecutor's question as to whether the shirt that she was shown at trial was the same shirt worn by the robber.[59] A reading of the transcript confirms this. Detective Carroll testified that he handed her a bag from which she removed the shirt, and Foster

---

[59]St. Rec. Vol. 2 of 4, Trial Transcript, pp. 53, 54, 6/4/03.

26

immediately identified it as the shirt worn by the robber.[60]  Hartwell's suggestion that

Foster's testimony conflicted with that of Detective Carroll regarding her identification

of the shirt is baseless.  There was nothing for counsel to use for impeachment.

Next, Foster testified at trial that the perpetrator "had on like a bluish Hawaiian

looking shirt.  He had on a blue visor, some white looking shorts and some tennis

shoes."[61]  Foster also testified that the man took money from the cash register, clippers,

earrings, jewelry and their purses.[62]  She further testified at trial that the gun she saw was

"silver-ish with like a brown handle."[63]

Hartwell argues that counsel should have questioned Foster about the color of the

pants since the police report indicated that the perpetrator was wearing "blue jeans."

Hartwell also suggests that the police report indicated that only money and purses were

taken.  He further complains that, in the police report, Foster reportedly claimed the gun

was a dark color with a dark handle.

Hartwell has not presented, and the record does not contain, a copy of the police

report to establish or compare its contents to the challenged testimony.  Nevertheless, the

record is clear that the defense intended and attempted to convince the jury that Hartwell

---

[60]St. Rec. Vol. 3 of 4, Trial Transcript, p. 30-31, 6/5/03.

[61]St. Rec. Vol. 2 of 4, Trial Transcript, p. 43, 6/4/03.

[62]Id., at 49-50.

[63]Id., at p. 48.

was not the person who committed the robbery.  Hartwell readily admits in his argument that he does not deny that a robbery occurred.  It therefore would make no difference to his defense if the man who committed the robbery had a dark gun and wore blue jeans.

On cross-examination, Hartwell's counsel focused his questions on Foster's ability to see the perpetrator's face, since that is how she chose Hartwell's picture in the line-up.[64]  This line of questioning was in keeping with the defense theory and relevant to the challenge to the identification Foster made.  The fact that it was not successful does not mean that counsel performed deficiently.

An unsuccessful strategy does not necessarily indicate constitutionally deficient counsel.  Martinez v. Dretke, 99 Fed. Appx. 538, 543 (5th Cir. 2004).  "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Strickland, 466 U.S. at 689 (citations omitted).  The same is true in this case.

Hartwell has not established that his counsel was deficient in his cross-examination of Foster or, in hindsight, failing to pursue different lines of questioning.

---

[64]Id., at pp. 56.

28

The state court's denial of relief on this issue was not contrary to, or an unreasonable application of, Supreme Court precedent.

(3)      FAILURE TO IMPEACH TROY MILLRO

Hartwell complains that his counsel should have impeached Millro's testimony by establishing contradictions regarding whether he or his wife found the items that belonged to Foster and Phillips.  At trial, Millro testified that he followed Hartwell into his own backyard, where he stored bags of clothes.[65]  Hartwell pulled out a small white plastic bag which contained cards, including medicaid cards, credit cards and identification cards.[66]  He testified that he told Hartwell to take the bag with him.[67] Afterward, Millro looked in his clothes bags again and found another bag which contained more medicaid cards, food stamp cards, work identification and other papers. He then went inside to tell his wife what he had found.  The two of them went through the items to see if they could contact the owners.

On cross-examination, Hartwell's counsel asked Millro if he was worried about being questioned by police and worried that his wife found another woman's purse in their backyard.[68]  Millro answered that his wife did not find another woman's purse.

---

[65]Id., at 60.

[66]Id.

[67]Id., at p. 61.

[68]Id., at p. 68.

Counsel then questioned Millro about his contrary statement to police that his wife had found the items. Millro responded that he did not want to have anything to do with the things he found. He also reminded counsel that he did not find a purse and that the items he located were in a plastic bag.[69] Millro testified that he and his wife just wanted to return the items to their rightful owner.[70]

The testimony reflects that Millro never testified at trial that his wife had found the items. The statement was apparently made to police during the initial investigation. Nevertheless, the transcript shows that Hartwell's counsel did use the prior statement in an attempt to impeach or challenge Millro's trial testimony.

Counsel also questioned Millro about how he knew that the items had come from the Golden Beauty Supply Store. Millro denied knowing from where the items came and instead stated that he only knew that Hartwell said he "robbed them bitches." Hartwell's counsel repeatedly tried by his questions to suggest that Millro did know. Counsel also questioned Millro about why he called Foster's home if he already knew where to take the items. Millro consistently replied that he did not know until he and his wife called.

Whether counsel was successful in his efforts to show conflict or lack of credibility is not the measure of whether he was effective under Strickland. The record demonstrates that counsel tried to do that which Hartwell complains he did not do; i.e.,

---

[69]Id., at p. 70.

[70]Id., at pp. 68, 70.

show the jury the conflicts in Millro's various statements.  The weight given to Millro's testimony was within the ambit of the jury's discretion and is not to be second-guessed by this court.

Hartwell has failed to establish that his counsel performed deficiently in cross-examining Millro. The denial of relief on this claim was not contrary to, or an unreasonable application of, Strickland.  Hartwell is not entitled to relief on this claim.

(4)     FAILURE TO OBJECT TO THE HEARSAY TESTIMONY OF DETECTIVE CARROLL

Hartwell argues that his counsel should have objected to Detective Carroll's testimony regarding the identification process as it applied to Phillips.   The trial transcript reflects that Hartwell's counsel tried to object to the introduction of witnesses' comments about the perpetrator.  The following exchange took place during the State's questioning of Detective Carroll:

Q       Did they tell you whether or not they had gotten a look at his face before he covered his face?
A       Yes.
MR. THOMAS:     Objection. Hearsay.
MR. MARY:       Judge, it's, one, an explanation of conduct; and, two, it's all pursuant to his investigation; and, three, one of the victims has already testified so it's already in evidence.
THE COURT:      All right. I will let it go since they've already testified. One of them has already testified.
MR. MARY:       And on top of that it's excited utterance.

State Record Volume 3 of 4, Trial Transcript, p. 9, June 5, 2003.

31

Thus, when the State began to pry into the identification evidence received by Detective Carroll from Foster and Phillips, counsel voiced a hearsay objection. The Court overruled the objection. Counsel had no reason to continue to lodge his objection as the prosecutor continued with questions about the identification process.

The record shows that Hartwell's counsel did not object further to Detective Carroll's testimony as hearsay. Counsel instead used the testimony during cross-examination to challenge the officer's credibility, the veracity of the investigation and the identification process itself.[71] Under the circumstances of the case, the tactical decision not to object to the testimony at every turn was objectively reasonable. See Lamb, 179 F.3d at 358. Although counsel's strategy may have been unsuccessful, that does not serve as a basis to second-guess his performance. Martinez, 99 Fed. Appx. at 543; Strickland, 466 U.S. at 689.

The state courts' denial of relief on this claim was not contrary to, or an unreasonable application of, Strickland. Hartwell is not entitled to relief on this claim.

---

[71]St. Rec. Vol. 3 of 4, Trial Transcript, pp. 42-45, 6/5/03.

## RECOMMENDATION

For all of the foregoing reasons, it is **RECOMMENDED** that the petition of Romalis A. Hartwell for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this ___27th___ day of April, 2007.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE